**Joe ALDRICH, Sr., et al., Appellants,**

v.

**STATE of Texas ex rel. Emma COX, et al., Appellees.**

No. 12–82–0168–CV.

Court of Appeals of Texas, Tyler.

Sept. 15, 1983.

Connie Mayer, Mayer & Stansbury, Nacogdoches, for appellants.

Emerson Stone, Stone & Stone, Jacksonville, for appellees.

McKAY, Justice.

The opinion delivered on August 11, 1983, is withdrawn and the following is substituted therefor.

This is an appeal from a quo warranto action in which the existing board of directors of the Stryker Lake Water Supply Corporation was ousted and a new board was installed. The principal issue on this appeal is whether the existing board had the authority to adopt a new set of bylaws, without a vote of the members of the nonprofit corporation thereon, and to make said bylaws operate retroactively.

The Stryker Lake Water Supply Corporation (corporation) was formed as a nonprofit corporation in June 1965. Since the corporation was, and is, indebted to the Farmers Home Administration (FHA), it is supplied from time to time with bylaws prepared by FHA which it is required, as a condition of the loan, to adopt.

The initial set of bylaws governing the corporation was promulgated by FHA in 1964 and adopted by the board of directors of the corporation alone in 1966, in accordance with Art. 1396–2.09,[1] which provides that the initial bylaws shall be adopted by the board of directors. Article IV of the initial bylaws provided that there would be five directors elected at the annual membership meeting, and that they would serve for one year terms.

Thereafter in 1976 the FHA sent out a new set of bylaws, with a letter directing that the corporation adopt them. The 1976 bylaws, in Article IV, provided that five directors be elected at the next annual membership meeting, and that those directors should then break into classes and assign a one, two or three-year term of

---

1. All references are to Tex.Rev.Civ.Stat.Ann., Art. 1396–1.01, et seq., commonly known as the Texas Non-Profit Corporation Act, unless otherwise noted.

office to each director. After these directors served their assigned terms, each subsequently elected director was to serve a three-year term, thereby creating staggered terms of office.

For some reason, the 1976 bylaws were not adopted by the corporation. After the FHA ascertained this fact, it notified the board in late 1981 that these bylaws must be adopted. Thereupon the board unanimously adopted the 1976 bylaws at a special meeting on February 1, 1982. The board decided to make the adoption of said bylaws retroactive to their election in March 1981 and then proceeded to divide its membership into three classes and designated two members whose terms of office would expire in March 1982. The 1981 board then sent notice to all shareholders that an election for these two positions would be held at the annual membership meeting in March 1982.

On the day before the annual meeting, the Board received the 1981 bylaws from the FHA, which bylaws contained an identical staggered-term provision for election of directors. At the meeting, a dispute arose between Relators, who contended that the 1976 bylaws had not been properly adopted *by the shareholders,* and thus the corporation was operating under the 1966 bylaws, (meaning a whole new board of five was to be elected), and Respondents (the 1981 Board), who contended that the 1976 bylaws governed the election. Due to the ensuing chaos, the election was not held, but the shareholders did adopt the 1981 bylaws.

A special meeting was scheduled for April 23 to elect new board members, and the 1981 board again sent notice to the shareholders that an election for two director positions would be held at said meeting. The record reflects that the Relators herein also sent notices to some, but not all, of the members prior to the April 23 meeting, notifying said members that the Relators would attempt to elect five new directors rather than two, and requesting proxies therefor.

The election was held on April 23, and the results were 105 votes for a five-member

board and 102 votes for the two candidates nominated by the 1981 board. The following day, the 1981 board declared all ballots containing five names invalid and that their two nominees were validly elected.

Relators then filed this quo warranto action and prevailed. The trial court rendered judgment ousting the existing board and declaring the five persons for whom 105 votes were cast as the 1982 board. From this judgment respondents—the three directors remaining from the 1981 board and the two newly elected directors—have perfected their appeal.

The trial court made and filed findings of fact and conclusions of law as follows:

### FINDINGS OF FACT

1. The By-laws of the Stryker Lake Water Supply Corporation dated November 16, 1976, and adopted by the 1981 Board of Directors, Joe Aldrich, Sr., W.D. Fuller, Erastus Johnson, H.D. Stafford, and Elmer Stewart, on February 1, 1982, were not validly adopted.

2. The unanimous decision made by the 1981 Board of Directors to divide into classes as per the requirements of the 1976 By-laws, said division made retroactive to the beginning of the 1981 term of office, exceeded the scope of the authority of the 1981 Board of Directors.

3. The By-laws of the Stryker Lake Water Supply Corporation dated October 27, 1981, which were adopted at the meeting held on March 12, 1982, were validly adopted.

4. The By-laws that were adopted on March 12, 1982, required that five new directors be elected for the terms of office beginning in 1982.

5. The 1981 Board of Directors, Joe Aldrich, Sr., W.D. Fuller, Erastus Johnson, H.D. Stafford, and Elmer Stewart did not have the sole authority to set the purpose of the special meeting held on April 23, 1982, and to determine the number of directors to be elected.

6. The Notice of the special meeting to be held on April 23, 1982, sent by the

1981 Board of Directors, constituted proper notice of the special meeting pursuant to Texas Business Corporations Act.

7. The election held on April 23, 1982, was valid.

8. At the special meeting held on April 23, 1982, 105 votes were cast for five new directors, Wayne Freeney, James Gardner, Herbert B. Kitzman, Elvis Sessions, and Lewis Wagoner, Sr., and 102 votes were cast for two new directors, T.C. Smith and Elmer Stewart.

## CONCLUSIONS OF LAW

1. The Court finds that W.D. Fuller, Erastus Johnson, H.D. Stafford, and Elmer Stewart are not entitled to hold office and that they are, therefore, ousted.

2. The Court further finds that Wayne Freeney, James Gardner, Herbert B. Kitzman, Elvis Sessions, and Lewis Wagoner, Sr. were properly and validly elected as the directors on the 1982 Board of Directors of the Stryker Lake Water Supply Corporation.

In their first point of error, appellants contend there is no evidence to support finding of fact number 5 above, that the 1981 board did not have the sole authority to set the purpose of the April 23 meeting and to determine the number of directors to be elected. They argue that since the authority to manage the corporation is vested in the board by Art. 1396–2.14, and the bylaws give the secretary of the corporation authority to set the time, place and purpose of the annual meeting, it follows that the board alone has the power to determine the *numbers of directors* to be elected at any election, and that the members have no such power.

■ We find no merit in this contention. It is our opinion that neither the board of directors nor the members of the corporation has the authority to determine the number of directors to be elected at an election. Art. 1396–2.15 provides in pertinent part that directors shall be elected or appointed in the manner and for the terms provided in the articles of incorporation or the bylaws, and it is the bylaws of this corporation which prescribe the number of directors to be elected at any given election.

■ We are, of course, aware that the board could indirectly accomplish this objective through exercise of its authority under the 1976 bylaws, if said bylaws were validly adopted, to divide into classes and assign one-, two-, or three-year terms to directors of each class. Since the board consisted of five directors, the effect of this decision would be that two directors would be elected in each of two years, while only one director would be elected in the third. This the 1981 board attempted to do by first purportedly adopting the 1976 bylaws providing for staggered terms for directors, without a vote of the membership thereon, and then determining that said bylaws should be made to operate retroactively. The real issue in this case then becomes: were these actions within the scope of the 1981 board's authority? We hold that they were not.

Art. 1396–2.09 provides in pertinent part that the power to alter, *amend,* or repeal the bylaws *or to adopt new bylaws* shall be vested in the members, unless delegated by them to the board. We find no evidence of any such delegation to the board in this case. On the contrary, article XX of each set of bylaws provides that said bylaws may be amended by a vote of the majority of the *members* present at any meeting of the corporation. We therefore hold that the purported adoption of the 1976 bylaws by the board alone exceeded the scope of their authority and thus the 1976 bylaws were never validly adopted.

It follows that if the 1976 bylaws were not validly adopted, then the board's decision to cause said bylaws to operate retroactively and then to break into classes with staggered terms thereunder likewise exceeded the scope of their authority. At the time this action took place, the bylaws governing the corporation were the 1966 bylaws, which provided for election of five new directors each year, since the members had not yet adopted the 1981 bylaws. Even if it could be said that the board had validly

adopted the 1976 bylaws, it is our opinion that they could not have caused said bylaws to operate retroactively. In the old case of *Steger v. Davis,* 8 Tex.Civ.App. 23, 27 S.W. 1068, 1070 (1894, writ ref'd), the court, in making a distinction between a resolution and a bylaw, quotes from Cook, Stock, Stockh. & Corp. Law. In pertinent part, the quoted section reads: "A bylaw differs from a resolution, in that a resolution applies to a single act of the corporation, while a by-law is a permanent and continuing rule, which is to be applied on all *future* occasions." (Emphasis added.) And in 18 Am.Jur.2d *Corporations,* § 168 (1965), the following statement is found: "Ordinarily, a bylaw can apply only to a future case *and has no retroactive operation.*" (Emphasis added.)

Therefore, even assuming *arguendo* that the 1981 board had the sole authority to set the purpose of the April 23 meeting, we hold that the evidence, in the form of the bylaws, establishes that the 1981 board did not have the authority to determine the number of directors to be elected at that meeting. Appellants' first point is overruled.

In points two and three, appellants attack the two conclusions of law made by the trial court, which are set out above in this opinion, on the basis that there is no evidence to support said conclusions. As stated by this court in *First National Bank in Dallas v. Kinabrew,* 589 S.W.2d 137, 146 (Tex.Civ. App.—Tyler 1979, writ ref'd n.r.e.), when faced with a challenge to conclusions of law based on legal and factual sufficiency of the evidence to support them:

> In the instant case, the question with regard to the power of attorney being general or special in nature is a question of law. Appellant's attack on the trial court's conclusion that the power of attorney is general, therefore, is not properly predicated upon issues of the legal or factual sufficiency of the evidence to support such conclusion. The trial court necessarily draws its conclusions of law from the facts as it finds them. The trial court's findings of fact are reviewable for

legal and factual sufficiency of the evidence to support them; its conclusions of law are reviewable when attacked as erroneous as a matter of law, but not when attacked on grounds of sufficiency of the evidence to support them, as if they were findings of fact. Appellant's points of error three, four, and five are overruled.

■ Appellants' only challenge to the trial court's conclusions of law is based upon the legal sufficiency of the evidence to support them, as if they were findings of fact. As stated above, the trial court's conclusions of law are not reviewable on that ground.

■ Moreover, we observe that only one of the trial court's findings of fact set out above was attacked as having no support in the evidence, and we have determined that that attack must fail. It is well settled that findings of fact not challenged by points of error are conclusively established and are binding both upon the parties and this court. *Ervin v. Ervin,* 624 S.W.2d 264, 266 (Tex.App.—Eastland 1981, writ dism'd); *Hagar v. Williams,* 593 S.W.2d 783, 787 (Tex.Civ.App.—Amarillo 1979, no writ); *Whitten v. Alling & Cory Co.,* 526 S.W.2d 245, 248 (Tex.Civ.App.—Tyler 1975, writ ref'd). In view of the unchallenged findings of fact, the bylaws of the corporation, the provisions of the Non-Profit Corporation Act and the principles discussed under point of error one, we cannot say, as a matter of law, that the trial court's conclusions of law were erroneous, even if we were presented with points of error properly challenging said conclusions on that basis. Appellants' points two and three are overruled.

■ Appellees have brought forward one counterpoint in which they contend the trial court erred in refusing to award attorney's fees to them in the judgment. They argue that they were forced to employ counsel to represent them in this quo warranto action since the district attorney declined to prosecute the suit himself, although he consented to the same being done in his name at relator's sole expense. Appellees argue that the trial court was required to render

judgment against appellants for appellees' attorney's fees by virtue of the provisions of Tex.Rev.Civ.Stat.Ann. art. 6257 (Vernon 1970), which reads as follows:

> If any person or corporation against whom any such proceeding is filed shall be adjudged guilty as charged, the court shall give judgment of ouster against such person or corporation from the office or franchise, and may fine such person or corporation for usurping, intruding into or unlawfully holding and executing such office or franchise *and shall give judgment* in favor of the relator *for costs of the prosecution.* (Emphasis added.)

The question is whether the phrase "costs of the prosecution" in art. 6257 includes attorney's fees. The term "costs," as commonly understood, includes only "costs of court" such as filing fees, clerk fees, etc., and does not include attorney's fees. Attorney's fees are not recoverable unless expressly provided for by statute. The necessary statutory basis for an award of attorney's fees may not be supplied by implication but can be found only in express terms of the statute in question. *Knebel v. Capital National Bank in Austin,* 518 S.W.2d 795, 803–804 (Tex.1974). There is no express provision for attorney's fees in the applicable statute.

The judgment of the trial court is affirmed.